IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JORDAN LEE BLACKWELL, ) | |
| ) | Civil Action No. 7:20cv00427 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| DR. LAWRENCE WANG, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Jordan Lee Blackwell, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, against Dr. Wang and Nurses Wickers and Hoffman, alleging that they failed to provide him with adequate medical care while he was housed at Green Rock Correctional Center ("Green Rock"). Nurses Wickers and Hoffman filed a motion for summary judgment, arguing that Blackwell has not established that they were deliberately indifferent to a serious medical need.[1] After reviewing the evidence, the court agrees and will grant their motion.

I.

Blackwell alleges that on the morning of November 4, 2019, Nurses Wickers and Hoffman observed Blackwell's "extremely swollen right foot that was oozing pus[]" during pill call. (ECF No. 9, at 3.) He claims that both nurses instructed him to return to his housing unit and submit a sick-call request. Blackwell states that he "explained that he was suffering from moderate to severe pain and that he could barely walk on his right foot." (*Id.*)

Blackwell further claims that on November 7, 2019, while he was standing for count

---

[1] Dr. Wang also filed a motion for summary judgment (ECF No. 37) that the court will address separately.

procedures, his right foot "exploded[,] causing opening cracks in his skin between his toes and was consistently oozing pus[] mixed with blood." (*Id.*) Blackwell states that a correctional officer notified medical personnel and transported Blackwell to the medical unit in a wheelchair.

In the medical unit, Dr. Wang examined Blackwell and prescribed him medication. After Blackwell's "condition" worsened and he continued to "suffer" for several months, he was referred to a dermatologist. On July 15, 2020, the dermatologist examined Blackwell, diagnosed him with urticaria,[2] and prescribed two medications "to minimiz[e] the effects" of his medical condition. (*Id.* at 5.)

Blackwell argues that Nurses Wickers and Hoffman were deliberately indifferent to his serious medical condition. He alleges that, after they observed his foot at pill call, they "denied him prompt medical treatment and caused a three [] day [] delay in [Blackwell] receiving treatment, which caused further swelling of his foot, which caused his foot to "explode." (*Id.* at 6.)

In their motion for summary judgment, Nurses Wickers and Hoffman argue that Blackwell has not established that either nurse observed a condition which might qualify as a serious medical need or that they were deliberately indifferent to any serious medical need. In support of their motion, Nurses Wickers and Hoffman provide declarations. (*See* ECF Nos. 36-1 & 36-2.)

---

[2] Urticaria, also known as hives, are red, itchy welts that result from a skin reaction. *See* Mayo Clinic, Chronic Hives, https://www.mayoclinic.org/diseases-conditions/chronic-hives/symptoms-causes/syc-20352719 (last visited February 23, 2022).

Nurse Wickers avers that during her employment at Green Rock, and specifically in November 2019, she did not work in the mornings and only worked between noon and 10:30 p.m. Nurse Wickers states that on November 4, 2019, she worked the "Pill Window" for the "afternoon pill pass." (Wickers Decl. ¶ 5 [ECF No. 36-1, at 1].) Nurse Wickers further states that while working at the Pill Window, it is "impossible to observe an inmate's feet." (*Id.* at ¶ 6.) According to Nurse Wickers, during pill pass, one nurse is staffed at the window passing out medication and a second nurse is stationed in the medical unit providing medication to inmates with diabetes. She avers that the nurse stationed in the medical unit working with diabetic inmates cannot see any of the inmates lined up for pill pass. Nurse Wickers states that "[o]ffenders are directed not to discuss medical issues with the nurse [at] the Pill Window because it slows down the process of providing medication to the offenders. However, if an offender told [her] that his foot was oozing pus, [she] would have directed him to wait until the end of pill pass so that he could be seen in the Medical Unit." (*Id.* at ¶ 8.)

Nurse Hoffman avers that she only worked shifts starting at noon and was not working during the morning pill call on November 4, 2019. Nurse Hoffman states that if Blackwell presented his foot to either of the nurses at the Pill Window, it would have been "impossible" for them to observe it. (Hoffman Decl. ¶ 6 [ECF No. 36-2, at 1].) According to Nurse Hoffman, the distribution of medication is done by one nurse through a window and the nurse cannot see below the chest level of the inmate at the window. She states that inmates are not supposed to discuss medical issues with the nurses during pill pass, and two correctional officers are stationed on either side of the window to move inmates through the line. Nurse

Hoffman avers that if Blackwell had complained to the nurse at the window about his foot, he would have been directed to complete a sick-call request form, and if he had complained that his foot was swollen and oozing a liquid, he would have been directed to wait until pill pass was completed and then then would have been taken to the medical unit for examination. Nurse Hoffman states that administrative records show that she was not assigned to work the Pill Window on November 4, 2019, and, therefore, she would have been the nurse assigned to provide medication to diabetic inmates within the medical unit.

In response to the nurses' motion for summary judgment, Blackwell submits an unverified statement, summarily arguing that the nurses were deliberately indifferent to his medical need and that instead of the "morning of November 7th," it was actually the "evening pill call" on that date when he complained to Nurse Wickers and Hoffman about his foot.[3]

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[3] The court notes that his complaint said the incident occurred on the morning of November 4, but his unverified response corrects the time from the "morning of November 7" to the evening of November 7. November 7 is the day Blackwell's foot allegedly "exploded" and the day he saw Dr. Wang. It is unclear whether Blackwell intends to allege that the incident occurred on November 4 or November 7, but the date is immaterial to the court's conclusion regarding the nurses' motion for summary judgment. Considering that neither nurse works in the mornings, the court will assume that, if the encounter happened, it occurred during the evening pill call.

Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Blackwell alleges that Nurses Wickers and Hoffman delayed medical treatment for his swollen and oozing foot. But Blackwell has not established that either nurse was deliberately indifferent to his medical need and, therefore, the court will grant their motion for summary

judgment.

To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994). A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). In fact, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent,

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Intentional delay of, or interference with, medical treatment can also amount to deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The Fourth Circuit, however, has held that there is "no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica*, 739 F. App'x at 755 (*citing Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)); *see also Shame v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)). Substantial harm may also be "'a lifelong handicap or permanent loss.'" *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* at 758 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)) (emphasis added).

In his complaint, Blackwell alleges that both nurses observed his foot during pill call and that both nurses told him to return to his housing unit to submit a sick-call request. But both nurses aver that only one of them would be working at the Pill Window at any time, and that the other would be in the medical unit exclusively dealing with diabetic inmates. The defendants' evidence conclusively establishes that the nurse dealing with the diabetic inmates

-7-

cannot see the inmates lined up for pill call, and that the nurse working the Pill Window cannot see inmates below their chest level. Blackwell has not submitted any evidence to dispute this testimony. Therefore, the court cannot conclude that either nurse actually observed Blackwell's foot during pill call. Actual knowledge is essential to the proof of deliberate indifference because officials who lack knowledge of a risk cannot be said to have inflicted punishment. *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir., 1995); *see also Farmer v. Brennan*, 511 U.S. at 825, 837-38 (1994). Because he has not established that either nurse had actual knowledge of his swollen and oozing foot, the court cannot find that either nurse was deliberately indifferent to his medical need.[4]

### IV.

For the reasons stated, the court will grant the defendants' motion for summary judgment.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 24th day of February, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[4] Moreover, to the extent that Blackwell may have verbally advised one of the nurses about his swollen and oozing foot, he still has not shown that a nurse was deliberately indifferent to a serious medical need. Blackwell claims that both nurses (although it is clear that only one nurse would have been working the Pill Window) told him to go back to his cell and file a sick-call request. There is no evidence that Blackwell did go back to his cell and file a sick-call request; even if he had done that, however, there is no evidence that either of the nurses was responsible for any delay between the time he may have filed the sick-call request and the time his foot allegedly "exploded."